**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3057
_____

QIAO XUE LI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A095-673-290)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2012

Before: FUENTES, JORDAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed March 15, 2012)
_____

OPINION
_____

PER CURIAM

Petitioner, Qiao Xue Li, seeks review of the Board of Immigration Appeals'

("BIA" or "Board") final order of removal.  For the reasons that follow, we will deny the

petition for review.

I.

Li, a native and citizen of China, entered the United States in June 2004 without a valid entry document and was charged with removal. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). At the time of her entry, Li informed an immigration officer that she feared returning to China. When she was further interviewed to determine whether her fear was credible, Li claimed that she would be harassed and discriminated against on account of her Christian religion if forced to return to China.

Li then hired attorney Sigang Li to prepare an application for asylum and related relief. In the application, which she submitted in December 2004, Li again indicated that she feared persecution upon returning to China on account of her membership in an underground Christian church.

A hearing was scheduled to take place on July 11, 2005. Sometime before the hearing, Li obtained new counsel and submitted a supplementary asylum application. In addition to her religious persecution claim, Li asserted a new family planning claim; Li now claimed that before she left China, she became pregnant in violation of the country's family planning policies and was forced to have an abortion. Li explained that her pregnancy was unauthorized because she was underage and unmarried at the time.

At the July 11, 2005 hearing, the Immigration Judge ("IJ") asked Li why she had not mentioned the abortion in her initial application. Li stated that she in fact had told her

2

former attorney about it, but that he had advised against including a family planning claim because she did not have proof of the abortion or any other evidence to support the claim. The IJ was unpersuaded by Li's explanation and found that her testimony was not credible. The IJ found it significant that Li had failed to mention the abortion at her airport interview or her credible fear interview, and indicated that he had no reason to conclude that Attorney Li had rendered ineffective assistance. The IJ noted that Li could have corroborated her testimony that she told Attorney Li about the abortion by bringing him into court.

The IJ also found that Li had failed to establish either past persecution or a well-founded fear of future persecution on account of her religion. Li testified that she began to attend an underground Christian church in 2003. Soon thereafter, the government began harassing and threatening members of the church by, for example, confiscating their Bibles and hymn books. According to Li, the government eventually closed the church, arrested several of its leaders, and sent them to a labor camp. Li also claimed that a government official who knew about her involvement with the church had harassed her and attempted to deter her from attending. After hearing this testimony, the IJ found that Li had failed to meet her burden of proof on this claim. Accordingly, the IJ denied Li's applications for asylum, withholding of removal, and relief under the CAT.

Li initiated an administrative appeal, but the BIA remanded the matter to the IJ because substantial portions of the hearing transcript were missing from the record.

3

On remand, the IJ subpoenaed Li's former attorney, Sigang Li, to determine whether he had, as Li claimed, advised against asserting a family planning claim based on her 2002 abortion. Attorney Li told the court that he could not consult his files to determine whether Li had discussed her alleged abortion with him because he had passed her case file along to her new attorney. Attorney Li insisted, however, that he always asked his Chinese clients whether they had encountered any family planning problems, and that he would never have advised a client to omit from her application a forced abortion simply because she did not have concrete proof of the procedure.

After the hearing, Li submitted a new affidavit recanting her previous position that she had told Attorney Li about the abortion. Instead, she now claimed that she had failed to mention the abortion because Attorney Li did not question her about this potential ground for relief.[1]

Following the hearing, the IJ denied relief. With respect to Li's family planning claim, the IJ first found that Attorney Li's testimony concerning the preparation of Li's

---

[1] Specifically, Li stated as follows:

[Attorney] Li testified that I did not tell him about abortion in China. He might be right about this because he probably did not ask me this question. Therefore, I probably did not tell him about my abortion. Since the abortion did occur, I do remember I told some lawyer or agency in Chinatown, New York before or after I met with [Attorney] Li. After listening to his testimony, I do not want to insist that I did tell [Attorney] Li about my abortion, because I cannot prove this.

(AR000231.)

4

first asylum application was credible and compelling. Next, the IJ found that Li's testimony was not credible, particularly given that she completely changed her story after Attorney Li testified. With respect to Li's religious persecution claim, the IJ found that Li had failed to demonstrate either that she would be singled out for persecution on account of her religious convictions or that there was a pattern or practice of persecution against Christians in China. In this regard, the IJ found it significant that Li did not hold a leadership position within the church; according to the IJ, only people in leadership positions in the Christian church face harm that might rise to the level of persecution.

Upon review, the BIA determined that the IJ did not commit any clear error in his credibility assessments. See 8 C.F.R. § 1003.1(d)(3)(i). The Board noted that, although Li attempted to explain why she had omitted the abortion from her initial application, the IJ was not obligated to credit her explanation, and he provided specific, cogent reasons for distrusting the veracity of her testimony. The Board also agreed with the IJ's determination that Li had failed to meet her burden on her religious persecution claim; although the Board determined that the IJ's finding that only people in religious leadership positions in China can face persecution was clearly erroneous, it concluded that such error was harmless because the record did not establish either a pattern or practice of persecution or that Li faced a particularized risk of harm on account of her alleged faith. Accordingly, the BIA dismissed the appeal.

Li now seeks review of the BIA's order.

5

We have jurisdiction over the petition for review pursuant to 8 U.S.C. § 1252(a)(1). When, as in this case, "the BIA issues a separate opinion . . . we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). We exercise de novo review over the BIA's legal determinations. Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004).

III.

A.

On appeal, Li first challenges the agency's adverse credibility determination. We review the facts upon which the BIA's decision rests, including the adverse credibility finding, for substantial evidence. Huang, 620 F.3d at 379. The agency's credibility determinations "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Gabuniya v. Att'y Gen., 463 F.3d 316, 321 (3d Cir. 2006). Under this "extraordinarily deferential standard," Abdulrahman v. Ashcroft, 330 F.3d 587, 598 (3d Cir. 2003), findings "will be upheld if [they are] 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Lin–Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (quoting INS v. Elias–Zacarias, 502 U.S. 478, 481 (1992)).

Substantial evidence supports the agency's decision to reject Li's credibility. As the BIA explained, Li failed to include any mention of her alleged abortion in her first

asylum application. While she initially blamed her omission on her attorney by claiming that he advised her not to include it, she later changed her story and indicated that perhaps she never told him about the abortion after all. According to Li, she never told him because he never asked. Although she now insists that this was an "adequate explanation" for the omission, it was reasonable for the agency to reject her explanation. [2]

Li also argues that the agency erred in finding that she failed to corroborate her testimony concerning the alleged forced abortion. Li claims that the 2006 medical report, which contains a notation that she had an abortion at some point in the past, and a letter from her mother, which likewise states that Li had an abortion, corroborate her testimony. The BIA reasonably declined to give significant weight to these documents. First, the medical record was not created until after Li submitted her amended asylum application, and did not, in any event, contain any specific details regarding the alleged incident. Similarly, the letter from Li's mother lacked sufficient indicia of reliability.

For these reasons, we conclude that the Board's credibility determination is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Lin–Zheng, 557 F.3d at 155 (internal quotation marks and citation omitted).

B.

---

[2] Li also argues that the BIA erred in basing its credibility determination in part on other discrepancies in the record, such as contradictory evidence regarding Li's place of residence at the time of the alleged abortion procedure. It appears, however, that the record supports the BIA's finding. Furthermore, to the extent that Li argues that the agency erred in giving evidentiary weight to Attorney Li's engagement letter, we note

Li also argues that the agency erred in finding that she failed to meet her burden of proof on her religious persecution claim. In order to establish a well-founded fear of future persecution, Li was required to show "a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." Abdulrahman, 330 F.3d at 592. An applicant can satisfy the objective prong of the well-founded fear of persecution standard in two ways: by showing that "she would be individually singled out for persecution" or by "demonstrat[ing] that 'there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .'" Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)).

Substantial evidence supports the BIA's determination that Li failed to demonstrate either that there was a pattern or practice of persecution of members of underground Christian churches in China, or that she faced a particularized risk of persecution. First, the documentary evidence in the record does not compel the conclusion that there are widespread instances of harm, or threats of harm, to Chinese Christians that are continuous in nature; while the 2009 Country Report on Human Rights Practices and the 2010 Religious Freedom Report indicate that local authorities sometimes punish members of unregistered religious groups, the report does not suggest

that the BIA did not rely on this document in reviewing the IJ's credibility determination.

that such abuses are sufficiently systematic, pervasive, or organized. See Wong v. Att'y Gen., 539 F.3d 225, 233 (3d Cir. 2008); In re A-M-, 23 I. & N. Dec. 737, 740-41 (BIA 2005). Moreover, it does not follow from Li's testimony that she was harassed by a local government official for attending an underground church that she will be individually singled out for persecution if forced to return to China. Therefore, substantial evidence supports the BIA's determination that Li failed to demonstrate a reasonable possibility of future persecution on account of her religion. See 8 C.F.R. § 1208.13(b)(2)(i)(B).

## IV.

Accordingly, we will deny the petition for review.